UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JUAN GÓMEZ,
   *Plaintiff*,

v.

DEPARTMENT OF CORRECTIONS *et al.*,
   *Defendants*.

No. 3:20-cv-00958 (JAM)

**INITIAL REVIEW ORDER PURSUANT TO 28 U.S.C. § 1915A**

  Plaintiff Juan Gómez is a prisoner in the custody of the Connecticut Department of Correction ("DOC"). He has filed a complaint *pro se* and *in forma pauperis* under 42 U.S.C. § 1983 against the DOC and thirteen DOC employees, principally alleging that the defendants retaliated against him, seriously injured him, denied him medical care, and transferred him to a restrictive facility in violation of his constitutional rights. He seeks damages, declaratory relief, and a preliminary injunction and security lien in connection with his claims. For the reasons set forth below, I will allow some of Gómez's claims to proceed after my initial review.

**BACKGROUND**

  Gómez names 14 defendants: the DOC, Warden Caron, Deputy Warden McLendon, Deputy Warden Kenny, Lieutenant Tyburski, Lieutenant Stabach, Lieutenant Kitt, Lieutenant Ouellete, Correctional Officer Quiron, Correctional Officer Guertin, Commissioner Rollin Cook, Lieutenant Visneau, Correctional Officer Canales, and Jane Doe Nurse.[1] Doc. #1 at 11. Each defendant is sued in their individual and official capacities. *Id*. at 12-14 (¶¶ 2-6).

---

[1] In the body of the complaint, Gómez refers to one defendant in some places as Lieutenant Oulette or Ouellette. Doc. #1 at 13, 16 (¶¶ 5, 12). I will refer to this defendant as his name appears in the case caption, Lieutenant Ouellete.

1

The following facts are alleged in the complaint and accepted as true for purposes of initial review only. On March 31, 2020, while housed at Carl Robinson Correctional Institution ("Carl Robinson"), Gómez, another inmate named Nazer, and several other inmates complained to Warden Caron, Deputy Warden Kenny, Lieutenant Tyburski, and Lieutenant Stabach about unreasonable denial of telephone usage, small food rations, unsanitary housing conditions, and being exposed to the coronavirus from staff who failed to wear personal protective equipment ("PPE"). Doc. #1 at 14 (¶ 7). These defendants indicated that their staff members were not required to wear masks. *Ibid.*

The next day, Gómez and the other inmates asked the same defendants to have PPE worn during staff unit tours. *Id.* at 15 (¶ 8). These defendants again informed Gómez that prison staff members were not required to wear masks to ensure inmates' safety from the coronavirus, and they told him to keep quiet. *Ibid*. Warden Caron told Gómez that if he did not keep quiet about this issue, she would see to it that her staff made sure he had a "hard stay" at Carl Robinson. *Ibid*. Gómez and other inmates also wrote a petition to the news, and Fox 61 News aired the issue live. *Id.* at 15, 19 (¶¶ 8, 22).

On April 5, 2020, during lunch period, Correctional Officer Guertin recalled Gómez's unit without any legitimate reason for the recall. *Id.* at 15 (¶ 9). Gómez heard other inmates ask Officer Guertin why she was recalling the unit. *Id.* at 15 (¶ 10). She responded that there had been a "code" signaled. *Id.* at 15 (¶ 10). Gómez did not believe that any code had been called, and he went back to his cell bunk and conversed with Nazer about nonviolent topics, within earshot of Officer Guertin's station. *Id.* at 15-16 (¶ 10). Guertin overheard their conversation and began threatening Gómez and Nazer that they would be sprayed with a chemical agent, "beat up," and sent to administrative segregation. *Id.* at 16 (¶ 10). After Gómez asked Guertin what she

was talking about, she replied, "You and Nazer are fucking going to seg." *Id.* at 16 (¶ 11). Gómez then saw Guertin go to the bubble, ask for the "I.D. book," and telephone her supervisors. *Ibid.*

Shortly thereafter, Lieutenant Ouellete, Lieutenant Kitt, Correctional Officer Quiron, and Correctional Officer John Doe responded to Officer Guertin's call, surrounded Gómez and shouted at him to get off his bunk. *Id.* at 16 (¶ 12). Officer Quiron twisted Gómez's wrist as he was attempting to get off his bunk, causing him pain and constricting his movement. *Ibid.* (¶ 13). As Gómez was escorted out of the unit, his handcuffs were so tight that they instantly started to bleed profusely, and caused serious injuries to his arm and wrist. *Id.* at 17 (¶ 14). Officer Quiron yelled at Gómez to stop resisting, even though Gómez was not resisting, and Officer Doe twisted Gómez's arm and wrist unreasonably. *Ibid.* (¶ 15). Despite Gómez's bleeding and requests for medical attention, Officers Quiron and Doe, Lieutenants Ouellete and Kitt, and Nurse Doe ignored his requests and did not adjust his restraints. *Ibid.* (¶¶ 16-18). Gómez wrote to Commissioner Cook, Warden Caron, Deputy Warden Kenny, Deputy Warden McLendon, and several unnamed medical staff members to request medical care for his arm and wrist injuries, but these defendants failed to respond or remedy the issue. *Id.* at 19 (¶ 22); 22 (¶ 31).

Gómez was then transferred to Northern Correctional Institution ("Northern"), a Level 5, "Supermax" correctional facility where he was placed in isolated confinement without any administrative hearing, in violation of Administrative Directives 9.4 and 2.17. *Id.* at 18 (¶¶ 19-20). He was "immediately held down by several male[] officers and forcibly stripped naked," and then "housed in a cold cell and denied visits and the ability to contact his family." *Ibid.* (¶ 20). He is now being denied eligibility for placement in a halfway house, parole, and early release, which would not occur if he were housed in a restrictive facility other than Northern.

3

*Ibid*. During his isolated confinement, Gómez developed a mental health illness for the first time. *Id.* at 19 (¶ 21).

On July 10, 2020, Gómez filed this lawsuit. Count One of Gómez's complaint alleges violation of the First Amendment by Warden Caron, Deputy Warden McLendon, Deputy Warden Kenny, Lieutenant Tyburski, and Lieutenant Stabach. *Id*. at 20 (¶ 25). Count Two alleges violations of the Eighth Amendment for excessive force and failure to intervene against Officer Guertin, Officer Quiron, and Lieutenant Kitt. *Id*. at 20-21 (¶¶ 27-29). Count Three alleges violations of the Eighth Amendment for deliberate indifference to his medical needs against all defendants. *Id*. at 21-22 (¶ 31). Finally, Counts Four and Five allege due process and equal protection violations under the Fourteenth Amendment against Commissioner Cook, Warden Caron, and Deputy Warden Kenny. *Id*. at 22-23 (¶¶ 33-35). Gómez seeks money damages, a declaration that the defendants violated his rights, injunctive relief transferring him to the general population, and a security lien on the defendants' assets. *Id*. at 24.

## DISCUSSION

Pursuant to 28 U.S.C. § 1915A, the Court must review a prisoner's civil complaint against a governmental entity or governmental actors and "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." If the prisoner is proceeding *pro se*, the allegations of the complaint must be read liberally to raise the strongest arguments that they suggest. *See Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010).

The Supreme Court has set forth a threshold "plausibility" pleading standard for courts to evaluate the adequacy of allegations in federal court complaints. A complaint must allege enough

facts—as distinct from legal conclusions—that give rise to plausible grounds for relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Notwithstanding the rule of liberal interpretation of a *pro se* complaint, a complaint may not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See, e.g.*, *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).

### *Claims against DOC*

As a threshold matter, Gómez lists the DOC as a defendant and brings several of his claims against "all defendants." But the DOC is an entity of the State of Connecticut and is, therefore, not a "person" subject to suit for a violation of the Constitution under 42 U.S.C. § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *Reynolds v. Barrett*, 685 F.3d 193, 204 (2d Cir. 2012). Accordingly, I will dismiss each of Gómez's claims against the DOC.

### *First Amendment right to free speech and retaliation*

Gómez alleges First Amendment claims against Warden Caron, Deputy Warden McLendon, Deputy Warden Kenny, Lieutenant Tyburski, and Lieutenant Stabach for denying him use of the telephone and for retaliating against him due to his complaints about the prison staff's failure to use PPE. Doc. #1 at 20 (¶ 25).

As an initial matter, Gómez appears to make a standalone claim that the "unreasonable" denial of telephone use violates his First Amendment rights. Even assuming that the denial of telephone privileges may in some circumstances violate an inmate's First Amendment right to freedom of speech, *see, e.g.*, *Joseph v. Annucci*, 2020 WL 409744, at *6 (S.D.N.Y. 2020), Gómez's allegations about the "unreasonable" denial of telephone usage are conclusory. He has not alleged the context of the restriction on his telephone usage, so it is unknown whether this

5

alleged First Amendment violation is the result of a policy, regulation, disciplinary sanction, or some other penological reason. Accordingly, Gómez has not alleged a plausible claim for violation of his First Amendment rights with respect to denial of telephone usage.

With regard to Gómez's claim that he was subject to retaliation for complaining about the staff's failure to use PPE, in order "[t]o establish a First Amendment retaliation claim, [Gómez] must show (1) that the speech or conduct at issue was protected, (2) that the [official] took adverse action against [him], and (3) that there was a causal connection between the protected speech and the adverse action." *Brandon v. Kinter*, 938 F.3d 21, 40 (2d Cir. 2019) (cleaned up). The Second Circuit has "instructed district courts to approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015). For this reason, a prisoner's First Amendment retaliation claim must "be supported by specific and detailed factual allegations, not stated in wholly conclusory terms." *Ibid.* (cleaned up).

As to Warden Caron, the complaint alleges that Gómez complained about the staff's failure to wear PPE, and Warden Caron responded by warning Gómez that "she would see to it that her staff made sure he had a hard stay at Carl Robinson C.I." Doc. #1 at 15 (¶ 8). A prisoner has a right under the First Amendment to complain about prison conditions, especially conditions that the prisoner believes endanger his health and safety. "The filing of grievances clearly constitutes protected activity; courts within this Circuit have also found that in some circumstances this protection extends beyond the filing of formal grievances to oral complaints made to corrections officers." *Dehaney v. Chagnon*, 2017 WL 2661624, at *3 (D. Conn. 2017)

(cleaned up). Moreover, "[u]nder some circumstances, verbal threats may constitute adverse action, depending on their degree of specificity and the context in which they are uttered." *Treizon Lopez v. Semple*, 2019 WL 2548136, at *4 (D. Conn. 2019). Here, I conclude for initial pleading purposes and in view of the subsequent adverse events that soon occurred while Gómez was at Carl Robinson, that Gómez has alleged enough facts to allow his First Amendment retaliation claim against Warden Caron to proceed.

On the other hand, the complaint does not allege any actions by defendants McLendon, Kenny, Tyburski, and Stabach to support a claim for First Amendment retaliation. They did not threaten Gómez, and the complaint does not allege how Kenny, Tyburski, and Stabach personally participated in any of the subsequent adverse events that Gómez experienced while at Carl Robinson. "It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013).

### *Eighth Amendment excessive force*

Gómez alleges that he was subject to the use of excessive force by defendants Guertin, Quiron, and Kitt. Doc. #1 at 20-21 (¶¶ 27-29). The Eighth Amendment to the U.S. Constitution protects against the infliction of cruel and unusual punishment. *See* U.S. Const. amend. VIII. "Although not every malevolent touch by a prison guard gives rise to a federal cause of action, inmates have the right to be free from the unnecessary and wanton infliction of pain at the hands of prison officials." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (internal quotations and citations omitted). In order to state an Eighth Amendment claim for the use of excessive force, an inmate must allege two elements: (1) a sufficiently serious use of force (the objective element)

(2) that has been inflicted for malicious and sadistic reasons rather than in a good-faith effort to maintain or restore discipline (the subjective element). *See Harris v. Miller*, 818 F.3d 49, 63-64 (2d Cir. 2016) (*per curiam*). Officers are liable not only when they use excessive force themselves, but also when they fail to intervene to stop the excessive use of force by another officer when in a position to observe the conduct and with time to intervene. *See Sloley v. VanBramer*, 945 F.3d 30, 46-47 (2d Cir. 2019).

The complaint alleges facts to suggest that Guertin became hostile after overhearing a non-violent conversation that Gómez was having with another inmate, that Guertin threatened Gómez and called other officers to respond, that the other officers including Quiron, Ouellete, and Kitt responded and that they removed Gómez by means of using excessive force—including twisting of wrists and arms and using overtight handcuffs that caused injury—or stood by while knowing that others were doing so. Doc. #1 at 15-17 (¶¶ 10-15). For initial pleading purposes, the complaint alleges a plausible claim for excessive force against defendants Guertin, Quiron, Ouellete, and Kitt.

### *Eighth Amendment deliberate indifference*

Gómez alleges that all the defendants were deliberately indifferent to his serious medical needs. Doc. #1 at 21-22 (¶ 31). The Supreme Court has long recognized that prison officials violate the Eighth Amendment if they are deliberately indifferent to a substantial risk of serious harm or to the serious medical needs of a sentenced prisoner. *See Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976).

A deliberate indifference claim under the Eighth Amendment has two requirements. First, the prisoner must allege that he was subject to an objectively serious risk of harm or serious medical need, as distinct from what a reasonable person would understand to be a minor risk of

harm or minor medical need. Second, the prisoner must allege that a defendant prison official acted not merely carelessly or negligently but with a subjectively reckless state of mind akin to criminal recklessness (*i.e.*, reflecting actual awareness of a substantial risk that serious harm to the prisoner would result). *See Benjamin v. Pillai*, 794 F. App'x 8, 11 (2d Cir. 2019) (explaining that a sentenced prisoner must prove "that the charged official possessed 'a state of mind that is the equivalent of criminal recklessness.'") (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)); *see also, e.g.*, *Spavone v. N.Y. State Dept. of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013); *Hilton v. Wright*, 673 F.3d 120, 127 (2d Cir. 2012); *Collazo v. Pagano*, 656 F.3d 131, 135 (2d Cir. 2011) (*per curiam*).

With respect to the objective component, Gómez alleges that he was injured by the handcuffs that were applied too tightly and that his wrist was cut open and actively bleeding. Doc. #1 at 17 (¶¶ 14, 17). The Second Circuit has ruled that "swelling and cuts" from overtight handcuffs "are not sufficiently serious to meet the objective prong" for a deliberate indifference claim, because the objective component requires no less than a "'condition of urgency, one that may produce death, degeneration, or extreme pain.'" *Horace v. Gibbs*, 802 F. App'x 11, 14 (2d Cir. 2020) (quoting *Hathaway*, 37 F.3d at 66). Many other courts agree. *See, e.g., Wesson v. Oglesby*, 910 F.2d 278, 284 (5th Cir. 1990) (no deliberate indifference claim from overtight handcuffing based on "swollen wrists with some bleeding"); *McGarrell v. Arias*, 2019 WL 2528370, at *5 (no deliberate indifference claim from overtight handcuffing based on "swelling of his wrist and a cut of undefined seriousness"), *report and recommendation adopted*, 2019 WL 1254880 (S.D.N.Y. 2019); *Ramirez v. Allen*, 2017 WL 4765645, at *10 (D. Conn. 2017) (no deliberate indifference claim from overtight handcuffing based on "pain and discomfort from the tight handcuffs" but where "he does not allege that he suffered any permanent injury"); *Bryans v.*

9

*Cossette*, 2013 WL 4737310, at *10 (D. Conn. 2013) ("very tight handcuffs, which lead to bleeding and abrasions, do not constitute a serious medical need because they could not produce death, degeneration, or extreme pain"). Accordingly, I will dismiss Gómez's claim for deliberate indifference to his serious medical needs.

### *Fourteenth Amendment due process and equal protection*

Gómez alleges that Commissioner Cook, Warden Caron, Deputy Warden McLendon, and Deputy Warden Kenny violated his rights under the Fourteenth Amendment to due process and equal protection by transferring him to Northern where he was placed in isolated confinement. Doc. #1 at 18, 22-23 (¶¶ 19, 33-35).

The Due Process Clause of the Fourteenth Amendment protects both a right to "substantive" due process and "procedural" due process. *See County of Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998); *Wilson v. Santiago*, 2020 WL 1989135, at *3 (D. Conn. 2020). A claim of a violation of procedural due process "proceeds in two steps: We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (*per curiam*).

Substantive due process generally protects against the government's "exercise of power without any reasonable justification in the service of a legitimate governmental objective." *County of Sacramento*, 523 U.S. at 846. "The first step in substantive due process analysis is to identify the constitutional right at stake," then the court must "consider whether the state action … was arbitrary in the constitutional sense and therefore violative of substantive due process." *Lowrance v. Achtyl*, 20 F.3d 529, 537 (2d Cir. 1994).

Prison inmates do not generally have a liberty interest against being transferred from one prison facility to another facility. *See McMahon v. Fischer*, 446 F. App'x 354, 357 (2d Cir. 2011) (citing *Matiyn v. Henderson*, 841 F.2d 31, 34 (2d Cir. 1988)). Accordingly, Gómez cannot predicate his due process claim on the fact that he was transferred from Carl Robinson to Northern.

Although Gómez may believe that he has been subject to unjust treatment while at Northern, he does not allege any facts to suggest that any of the named defendants in this action were responsible for any of that unjust treatment. Defendants Caron, McLendon, and Kenny are all alleged to have worked at Carl Robinson, not at Northern. Although defendant Cook as DOC Commissioner had general supervisory authority over all DOC facilities, Gómez does not allege any facts to suggest that Cook directed or was personally involved in any mistreatment of Gómez that occurred at Northern. *See Wilson v. Santiago*, 2020 WL 5947322, at *5 (D. Conn. 2020) (collecting cases and discussing factors used to determine personal involvement of a supervisory official).

Nor does Gómez allege any facts to suggest that Cook, Caron, McLendon, or Kenny had any involvement in disciplinary proceedings or were responsible for any lack of protections that Gómez alleges he suffered in connection with such proceedings. Accordingly, I will dismiss Gómez's due process claim.

As for Gómez's equal protection claim, "[t]he Equal Protection Clause ... commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). "To state an equal protection claim, a plaintiff must allege facts showing that:

11

(1) he was treated differently from similarly situated individuals and (2) that the difference in or discriminatory treatment was based on 'impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Trowell v. Theodarakis*, 2018 WL 3233140, at *3 (D. Conn. 2018) (quoting *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000)). Alternatively, an equal protection claim can sometimes be sustained if the plaintiff "claims that he has been irrationally singled out as a 'class of one.'" *Trowell*, 2018 WL 3233140, at *3 (quoting *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008)). Here, because Gómez does not allege that he was treated differently than any similarly situated person, he has not alleged plausible grounds for relief under the Equal Protection Clause.

### *Injunctive relief*

Gómez seeks a preliminary injunction to require immediately removing him from administrative segregation and returning him to the general population. Doc. #1 at 24. I construe this claim for relief as a motion for a preliminary injunction.

A preliminary injunction is an "extraordinary remedy," and a mandatory injunction that would alter the status quo is "even more extraordinary." *H'Shaka v. O'Gorman*, 758 F. App'x 196, 198 (2d Cir. 2019) (cleaned up). In order for the Court to issue a mandatory injunction, a plaintiff must show that: (1) he will likely suffer irreparable harm in the absence of an injunction; (2) either (a) he has a "clear" likelihood of success on the merits, or (b) the balance of equities tips "decidedly" in his favor because "extreme or very serious damage will result from a denial of preliminary relief"; and (3) an injunction is in the public interest. *Ibid.*; *see also Jordan v. New York City Bd. of Elections*, 2020 WL 3168509, at *1 (2d Cir. 2020).

As discussed above, Gómez has not stated a plausible claim for relief related to his transfer to Northern or his conditions of confinement there. As a result, he has not established any likelihood of success on the merits of his claim, nor has he established that he faces extreme or very serious damage from a denial of preliminary relief, and I will deny his request for a preliminary injunction.

### *Declaratory relief*

Gómez also requests a "Declaratory Judgment stating that the defendants violated his 1st, 8th, and 14th amendment rights." Doc. #1 at 24. I will dismiss this claim because the Supreme Court has foreclosed this type of relief in federal courts against state officials. *See P.R. Aqueduct & Sewer Auth. V. Metcalf & Eddy*, 506 U.S. 139, 146 (1993) (explaining that sovereign immunity "does not permit judgments against state officers declaring that they violated federal law in the past."); *Green v. Mansour*, 474 U.S. 64, 68 (1985) ("We have refused to extend the reasoning of *Young*, however, to claims for retrospective relief.").

### *Official capacity claims*

Gómez has sued each remaining defendant in their individual and official capacities, and each remaining defendant is an employee of the DOC. Doc. #1 at 12-14 (¶¶ 2-6). Because I have dismissed Gómez's claims for injunctive and declaratory relief, his only remaining claims are for money damages. DOC employees are immune from money damages suits in their official capacities. *See Currytto v. Doe*, 2019 WL 2062432, at *4 (D. Conn. 2019) (citing *Pennhurst State Sch. & Hosp. v. Haldermann*, 465 U.S. 89, 100 (1984) and *Davis v. New York*, 316 F.3d 93 (2d Cir. 2002)). Accordingly, I will dismiss all official-capacity claims for money damages, and the claims against the remaining defendants shall proceed against them in their personal capacities only.

*Security lien*

Gómez requests "a security lien placed upon the assets and/or properties of each defendant to ensure compensatory and punitive relief" pursuant to Connecticut General Statutes § 52-278a-b. Doc. #1 at 24. I understand Gómez's claim to request a prejudgment remedy. But such a remedy is available only if a plaintiff shows probable cause to conclude that judgment will be rendered in his favor. *See Roberts v. TriPlanet Partners, LLC*, 950 F. Supp. 2d 418, 420 (D. Conn. 2013) (quoting Conn. Gen. Stat. § 52-278d(a)). Although Gómez has alleged certain claims that give rise to plausible grounds for relief, the bare allegations in his complaint fall well short of establishing probable cause to conclude that his claims will succeed. Accordingly, I will deny without prejudice his request for a security lien absent a more substantial showing of his likelihood of success.

*Naming of defendants*

The complaint form filed by Gómez advises him of the need to identify by name in the list of "Defendant(s)" each person whom he wishes to name as a defendant and to write in "John Doe" or "Jane Doe" if he does not know a particular defendant's name. Doc. #1 at 4. Accordingly, in this ruling I have considered as defendants only those who have been specifically listed by Gómez as defendants in the caption of this action. If Gómez believes there are grounds to name any persons as defendants other than as described in this ruling, then he should promptly move to file an amended complaint that identifies such defendants in the caption (whether by their true name or by "John Doe" or "Jane Doe" designation) and that identifies them with respect to any particular claim, as well as states all necessary facts to show their personal involvement in the violation of any of his constitutional rights.

CONCLUSION

In accordance with the foregoing analysis, the Court enters the following orders:

(1) Gómez's First Amendment retaliation claim may proceed only against Warden Caron in her individual capacity for money damages. Gómez's Eighth Amendment excessive force claim may proceed only against Officer Guertin, Officer Quiron, Lieutenant Ouellete, and Lieutenant Kitt in their individual capacities for money damages. The Court DISMISSES all of Gómez's other claims against all other defendants.

(2) If Gómez believes there are additional facts he can allege that will overcome any of the deficiencies identified in this ruling, then he may file a proposed amended complaint by **November 25, 2020**.

(3) The Clerk shall verify the current work addresses for the remaining defendants with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the complaint to those defendants at the confirmed addresses within **twenty-one (21) days of this Order**, and report to the Court on the status of the waiver requests by not later than the **thirty-fifth (35) day after mailing**. If any defendant fails to return the waiver request, the Clerk shall arrange for in-person service by the U.S. Marshals Service on that defendant, and that defendant shall be required to pay the costs of such service in accordance with Fed. R. Civ. P. 4(d).

(4) The Clerk shall send a courtesy copy of the complaint and this Order to the DOC Office of Legal Affairs.

(5) All defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of

15

summons forms are mailed to them.

(6) The discovery deadline is **six months (180 days) from the date of this Order**. The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures" which the Clerk must sent to plaintiff with a copy of this Order. The order can be found at http://ctd.uscourts.gov/district-connecticut-public-standing-orders. Note that discovery requests should not be filed with the Court. In the event of a dispute over discovery, the parties should make a good faith effort to resolve the dispute amongst themselves; then, the parties should file the appropriate motion to compel on the docket.

(7) All motions for summary judgment shall be filed within **seven months (210 days) from the date of this Order.**

(8) Pursuant to Local Rule 7(a), a nonmoving party must respond to a dispositive motion (i.e., a motion to dismiss or a motion for summary judgment) within **twenty-one (21) days** of the date the motion was filed. If no response is filed, or the response is not timely, the Court may grant the dispositive motion without further proceedings.

(9) If Gómez changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)(2) provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. Gómez must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Gómez has more than one pending case, he should indicate all of the case numbers in the notification of change of address. Gómez should also notify the defendants or defense counsel of his new address.

(10) Gómez shall utilize the Prisoner E-Filing Program when filing documents with the Court. Gómez is advised that the Program may be used only to file with the Court. As discovery

16

requests are not filed with the Court, the parties must serve discovery requests on each other by regular mail.

It is so ordered.

Dated at New Haven this 4th day of November 2020.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge